IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN THE MATTER OF:

MISDEMEANOR CHARGES
PURSUANT TO 50 U.S.C. § 797
AND 18 U.S.C. § 1382

25mc19 GBW

**UNITED STATES' POSITION ON *MENS REA*
REQUIREMENTS IN 50 U.S.C. § 797 AND 18 U.S.C. § 1382**

The United States files this brief pursuant to the Court's Order for Briefing (Doc. 1). The order requires the United to explain its position as to the appropriate *mens rea* standards in 50 U.S.C. § 797 and 18 U.S.C. § 1382—particularly for defendants who are now accused of violating these statutes by entering the newly-established "New Mexico National Defense Area" (NMNDA), a sixty-foot-wide strip of military land that runs along the entire U.S.-Mexico border in the District of New Mexico. *See* Doc. 1 at 1–2.

As discussed below, if an individual enters the District of New Mexico from Mexico through an area that is not a designated port of entry—and knows that such conduct is unlawful—then has also violated 50 U.S.C. § 797, which prohibits the "willful[ ]" violation of "any defense property security regulation." If an individual enters the NMNDA with the intent to enter the United States without inspection, he or she had violated 18 U.S.C. § 1382, which prohibits entry onto a military property for a "purpose prohibited by law."

I.   **BACKGROUND**

On April 15, 2025, the Department of Interior transferred over 109,651 acres of federal land along the U.S.-Mexico border—including an approximately sixty-foot-wide strip of land along the U.S.-Mexico border in Doña Ana, Luna, and Hidalgo Counties in New Mexico—to the

Army.[1]  On April 18, 2025, the Secretary of the Army made these lands, now designated as the NMNDA, part of the Fort Huachuca Army installation in Arizona.[2]  This same day, Fort Huachuca's commander issued a security regulation designating the NMNDA as a restricted and controlled area under Army Regulation 190-13, which formally prohibits any unauthorized entry onto such areas.  A number of signs have now been placed along the NMNDA to warn individuals (in English and Spanish) that the NMNDA is "Department of Defense Property" and that "unauthorized entry is prohibited."



---

[1] *See* Public Land Order No. 7963; *see also* U.S. Dep't of Defense, "At Southern Border, Defense Secretary Visits Newly Created National Defense Area" (Apr 25. 2025), https://www.defense.gov/News/News-Stories/Article/Article/4166835/at-southern-border-defense-secretary-visits-newly-created-national-defense-area.

[2] *See id.*

In addition to the traditional offenses under 8 U.S.C. §§ 1325 and 1326 for entry without inspection and illegal reentry, defendants who enter the District of New Mexico from Mexico (through an area that is not a port of entry) now face additional charges—as they are now unlawfully entering both the United States *and* a restricted military area. First, such defendants are now being charged with violating 50 U.S.C. § 797, which makes it a crime (punishable by up to one year of imprisonment) to "willfully violate[ ] any defense property security regulation." Second, such individuals can also be charged with violating 18 U.S.C. § 1382, which makes it a crime (punishable by up to six month of imprisonment) to enter a military property "for any purpose prohibited by law or lawful regulation."

## II.  ISSUES

Pursuant to the Court's order that the United States submit briefing that support "its position as to the appropriate mens rea standard for both statutes," Doc. 1 at 2, the United States will address the following questions.

Whether, when an individual enters the District of New Mexico from Mexico through an area that is not a designated port of entry—and thereby enters the NMNDA restricted military area without authorization—that individual has also:

(1) "willfully" violated the Army's security regulation prohibiting unauthorized entry into the NMNDA, in violation of 50 U.S.C. § 797; and

(2) violated, with the required mental state, 18 U.S.C. § 1382's prohibition on entering military property "for any purpose prohibited by law or lawful regulation."

The United States will also "propose the factual basis it contends would be sufficient to satisfy all the elements (including *mens rea*) in a guilty plea" for defendants charged with violating 50 U.S.C. § 797 and 18 U.S.C. § 1382. Doc. 1 at 2.[3]

### III. KNOWLEDGE OF THE LAW IS NOT REQUIRED TO "WILLFULLY" VIOLATE THE REGULATION PROHIBITING NMNDA ENTRY

No federal courts appear to have specifically addressed how a defendant "*willfully* violates any defense property security regulation." 50 U.S.C. § 797(a)(1) (emphasis added). Nevertheless, as explained below, § 797(a)(1)'s "willfulness requirement . . . does not carve out an exception to the traditional rule that ignorance of the law is no excuse." *Bryan v. United States*, 524 U.S. 184, 196 (1998). Thus, a defendant who enters the District of New Mexico from Mexico through an area that is not a designated port of entry—and knows that such conduct is unlawful because it constitutes an unlawful entry into the United States itself—has violated § 797 by "willfully violat[ing]" the military regulation that prevents unauthorized NMNDA entries.

#### A. Applicable Legal Standards

An individual violates 50 U.S.C. § 797 if he or she "willfully" violates a military regulation that excludes him from military property. "The mental state sufficient for commission of a federal criminal offense is a question of congressional intent." *United States v. Benton*, 988 F.3d 1231, 1238 (10th Cir. 2021).

Generally, "[t]he term 'willfully' . . . [only] requires proof the defendant 'acted with knowledge that his conduct was unlawful.'" *Id.* (quoting *Bryan v. United States*, 524 U.S. 184, 193 (1998)). In such cases, "[t]he government need not show . . . that the defendant was aware of

---

[3] In discussing these issues, the United States assumes that such individuals never saw the signs warning them of the NMNDA—and were otherwise unaware of the NMNDA. (In the near future, many return offenders will have been formally advised of the NMNDA by U.S. Border Patrol authorities and will have signed an acknowledgment of that advisement.)

4

the particular statute he was violating." *United States v. Joseph*, 530 F. App'x 911, 919 (11th Cir. 2013) (citing *Bryan*, 524 U.S. at 196).[4] The government must only show that the defendant knew he was doing "*something* that was unlawful." *United States v. Wyatt*, 964 F.3d 947, 958 (10th Cir. 2020) (emphasis added); *see also United States v. Adegboye*, 732 F.3d 1195, 1199 (10th Cir. 2013) (same). "[I]n other words, a defendant 'cannot avoid prosecution by claiming that [he or she] had not brushed up on the law'" or the "specific regulation governing the conduct engaged in." *United States v. Brodie*, 403 F.3d 123, 147–48 (3d Cir. 2005) (quoting *United States v. Tooker*, 957 F.2d 1209 (5th Cir. 1992)). "Rather, the government must prove only that the defendant[] knew that [his] planned conduct was legally prohibited and that [he] therefore acted with an evil-meaning mind." *Id.* (quoting *Tooker*, 957 F.2d at 1214).

In sum, "when used in the criminal context, a 'willful' act" follows "the traditional rule that ignorance of the law is no excuse." *Bryan*, 524 U.S. at 191–95 (quotation omitted). Nevertheless, "an exception to [this] traditional rule" may exist in "highly technical statutes that present[ ] the danger of ensnaring individuals engaged in apparently innocent conduct":

> As a general matter, when used in the criminal context, a "willful" act is one undertaken with a "bad purpose." In other words, in order to establish a "willful" violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful.
>
> . . .
>
> In certain cases involving willful violations of the tax laws, [the Supreme Court] ha[s] concluded that the jury must find that the defendant was aware of the specific provision of the tax code that he was charged with violating. Similarly, in order to satisfy a willful violation in *Ratzlaf* [*v. United States,* 510 U.S. 135 (1994)], we concluded that the jury had to find that the defendant knew that his structuring of

---

[4] *See also United States v. Robertson*, 709 F.3d 741, 745 (8th Cir. 2013) (same) (citing *Bryan*, 524 U.S. at 191–92); *United States v. Orellana*, 341 F. App'x 501, 504 (11th Cir. 2009) (same) (citing *Bryan*, 524 U.S. at 191–92); *United States v. Claudio-Becerra*, No. PO 08-2305, 2008 U.S. Dist. LEXIS 139135, at *6 (D.N.M. Aug. 28, 2008) (Martinez, J.) ("The Supreme Court has held that the willfulness element in a statute requires "knowledge that the [defendant's] conduct is unlawful," not that the defendant knew the precise legal duty which he was charged with violating." (quoting *Bryan*, 524 U.S. at 196–98)).

cash transactions to avoid a reporting requirement was unlawful. Those cases, however, are readily distinguishable. Both the tax cases and *Ratzlaf involved highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct*. As a result, we held that these statutes carve out an exception to the traditional rule that ignorance of the law is no excuse and require that the defendant have knowledge of the law. The danger of convicting individuals engaged in apparently innocent activity that motivated our decisions in the tax cases and *Ratzlaf* is not present . . . [when a defendant] knew that his conduct was unlawful.

Thus, the willfulness requirement [in most cases] does not carve out an exception to the traditional rule that ignorance of the law is no excuse; knowledge that the conduct is unlawful is all that is required.

*Bryan*, 524 U.S. at 191–96 (emphasis added) (quotations, citations, and footnotes omitted).

### B. Defendants Who Know They Have Unlawfully Entered the U.S. Have Willfully Violated the NMNDA Regulation

The applicable statute, 50 U.S.C. § 797—particularly when applied to unauthorized NMNDA entries—is not a "highly technical statute[ ] that present[s] the danger of ensnaring individuals engaged in apparently innocent conduct." *Bryan*, 524 U.S. at 194. Thus, its "willfulness requirement . . . does not carve out an exception to the traditional rule that ignorance of the law is no excuse." *Id.* at 196.

Most aliens who enter the District of New Mexico from Mexico through an area that is not a designated port of entry—and thereby enter the NMNDA restricted military area without authorization—are not "engaged in apparently innocent conduct." *Id*. Indeed, such individuals have typically unlawfully "enter[ed] the United States at . . . [a] place . . . [not] designated by immigration officers." 8 U.S.C. § 1325(a)(1). Because such unauthorized entries are generally "undertaken with a 'bad purpose'" (e.g., the purpose of avoiding detection by law enforcement authorities), "[t]he danger of convicting individuals" under 50 U.S.C. § 797 for unauthorized NMNDA entries—due to "apparently innocent conduct," as opposed to a "bad purpose"—is extremely low. *Bryan*, 524 U.S. at 194.

Moreover, § 797's prohibition on "willful violations" of the military regulation preventing unauthorized NMNDA entries is not a "highly technical statute[ ] that present[s] [such a] danger of ensnaring individuals engaged in apparently innocent conduct." *Id.* Rather, this statute merely criminalize conduct that is already unlawful—i.e., illegally entries into the United States—when that conduct occurs on the NMNDA. Consequently, "the willfulness requirement [in 50 U.S.C. § 797 for unauthorized NMNDA entries] does not carve out an exception to the traditional rule that ignorance of the law is no excuse." *Id.* at 196. Instead, "knowledge that the conduct [of crossing into the United States in an area not designated as a port of entry] is unlawful is all that is required." *Id.*; *Benton*, 988 F.3d at 1238; *Wyatt*, 964 F.3d at 958.

Thus, for example, if an illegal alien enters the District of New Mexico from Mexico through an area that is not a designated port of entry—and knows that such conduct is unlawful (as an unauthorized entry into the United States)—then he has violated § 797, even if he or she (1) never saw a sign designating the NMNDA as a restricted area; (2) never knew that he or she was entering military property; (3) was unaware that the military restricted unauthorized entries onto this property; and (4) did not specifically intend to violate the security regulation. *See Bryan*, 524 U.S. at 196; *Benton*, 988 F.3d at 1238; *Wyatt*, 964 F.3d at 958.[5]

Rather, to be convicted of "willfully violat[ing] [a] defense property security regulation," § 797(a)(1), under these specific circumstances, the United States must show:

  (1) The defendant knowingly and voluntarily entered the United States from Mexico through an area that is not a designated port of entry.

---

[5] There may be some limited cases where certain aliens—such as very young children or those with severe mental disabilities—enter the District of New Mexico from Mexico outside of a port of entry, but do so *involuntarily* or without knowledge that they are entering the United States illegally. Such aliens would not be guilty of a § 797 offense if they did not "willfully" violate the military regulation preventing unauthorized NMNDA entry—i.e., if they did not "act[ ] with knowledge that [their] conduct [of crossing into the United States in an area not designated as a port of entry] was unlawful." *Benton,* 988 F.3d at 1238 (quoting *Bryan*, 524 U.S. at 193). Such cases, however, are likely exceedingly rare.

    (2) The defendant knew that entering the United States from Mexico through an area that is not a designated port of entry was unlawful.

    (3) When entering the United States from Mexico through an area that is not a designated port of entry, Defendant also entered upon the "New Mexico National Defense Area" (NMNDA) military installation.

    (4) The NMNDA is regulated by a "defense property security regulation" that precludes unauthorized entry upon the NMNDA.

    (5) The Defendant did not have the authorization of the United States government to enter the NMNDA.

*See* 50 U.S.C. § 797; *Bryan*, 524 U.S. at 196; *Benton*, 988 F.3d at 1238; *Wyatt*, 964 F.3d at 958.

### C. The Posting Requirement in § 797(b) Does Not Affect the *Mens Rea* Analysis

There is a separate requirement in § 797(b)—distinct from the "misdemeanor violation" set forth in § 797(a)—that the "regulation . . . covered by [§ 797(a)] . . . be posted in conspicuous and appropriate places." In discussing a similar requirement in 40 U.S.C. § 1315,[6] the Tenth Circuit has observed that "some circuits have treated proof of posted (or actual) notice as a required element of regulatory crimes." *United States v. Baldwin*, 745 F.3d 1027, 1034 (10th Cir. 2014) (citing *United States v. Strakoff*, 719 F.2d 1307, 1309 (5th Cir. 1983)). "But other circuits have refused to read the posting requirement as a prerequisite to prosecution and indeed found it *irrelevant* to any prosecution." *Id.* (emphasis added).[7] Nevertheless, "[n]either [the Tenth Circuit]

---

[6] *See* 40 U.S.C. § 1315(c)(1) (providing that "regulations [issued by the Secretary of Homeland Security] shall be posted and remain posted in a conspicuous place on the [federal] property").

[7] *See, e.g., United States v. Strong,* 724 F.3d 51, 56–58 (1st Cir. 2013) (observing that (a) "[t]he statute [40 U.S.C. § 1315(c)(1)] only require[d] conspicuous posting"— and not "actual notice" and (b) the posting was not a "prerequisite for prosecution"); *United States v. Irby*, 269 F. App'x 246, 248–49 (4th Cir. 2008) (observing that (a) "[n]either the authorizing statutory subsection [for the criminal offense, 38 U.S.C. § 901(c)], nor the regulation subsection describing the offense . . . include[ed] a requirement that the regulations be posted on [federal] property;" (b) "[s]uch [a] requirement [was] found elsewhere in the statute [§ 901(d)] and regulation"; and (c) "when Congress wishes to make posting an element of an offense, it is well aware of how to do so").

nor the Supreme Court has decided whether posting the notice" in such cases "is an element of the regulatory offenses at issue." *Id.*

Even if the "conspicuous and appropriate" posting requirement in § 797(b) were viewed as an element of the offense, that element is satisfied because approximately 199 signs have been placed along this District's 180-mile border with Mexico. Given that only "conspicuous and appropriate" posting— and not "actual notice"—is required under § 797(b), *see, e.g., Strong*, 724 F.3d at 56–58, there is no requirement to ensure that everyone who crosses U.S.-Mexico border within this District will immediately see the signs. The placement of these signs—in light of the often difficult and unforgiving desert and mountainous terrain spanned by the NMNDA over these 180 miles— is "conspicuous and appropriate." (The federal government is currently working on installing additional signs.)

Moreover, this posting requirement does not affect the *mens rea* analysis. First, aliens who enter the District of New Mexico from Mexico outside of a port of entry do not need a sign to tell them that they are doing "*something* that [is] unlawful." *Wyatt*, 964 F.3d at 958 (emphasis added). Second—even assuming they took the time to read and an understand the 12-by-18-inch sign's implication (i.e., that they have now entered the United States *and* "Department of Defense" property without permission)—their "bad purpose" has not fundamentally changed. *Bryan*, 524 U.S. at 191. Indeed, their fundamental purpose is typically to enter (and then remain in) the *United States* undetected—and not to do something unlawful on, or unlawfully enter, military property. Third, § 797's prohibition on "willful violations" of the regulation preventing unauthorized NMNDA entries is not something "highly technical" that risks "ensnaring . . . innocent conduct." *Id.* at 194. Thus, as noted, "knowledge that the conduct [of crossing into the United States in an area not designated as a port of entry] is unlawful is all that is required." *Id.* at 196.

### D. Conclusion

In conclusion, if a defendant enters the District of New Mexico from Mexico through an area that is not a designated port of entry—and knows that such conduct is unlawful—that defendant has violated § 797 by "willfully violat[ing]" the military regulation that prevents unauthorized entries into the NMNDA.

## IV. KNOWLEDGE OF THE NMMDA IS NOT REQUIRED TO ENTER A MILITARY PROPERTY FOR AN UNLAWFUL PURPOSE

As discussed below, a Defendant who enters the NMNDA from Mexico for the purpose of entering the United States without inspection has violated § 1382 by entering the NMNDA "for [a] purpose prohibited by law."

### A. General Principles

"Federal law makes the commander [of a military installation] responsible 'for the protection or security of' 'property subject to the jurisdiction, administration, or in the custody of the Department of Defense.'" *United States v. Apel*, 571 U.S. 359, 370 (2014) (quoting 50 U.S.C. §§ 797(a)(2), (4)). "The common feature of the places described in [18 U.S.C.] § 1382 is . . . that they have defined boundaries and are subject to the command authority of a military officer." *Id.* at 367. Such a military officer "at all times has retained authority and control over who may access the [property]." *Id.* at 370 (quotation omitted). Thus, "any directive issued by [such a] commander" regarding "the parameters for authorized entry to or exit from" the military property is "legally enforceable against all persons." *Id.* (quoting 32 C.F.R. § 809a.3).

If an individual enters military property "for any purpose prohibited by law or lawful regulation," he has violated 18 U.S.C. § 1382. As this statute is silent on the required mental state as to the land's restricted military status, the Supreme Court has instructed that "[w]hen interpreting federal criminal statutes that are silent on the required mental state, [courts are to] read

10

into the statute 'only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" *Elonis v. United States,* 575 U.S. 723, 736 (2015) (quoting *Carter v. United States*, 530 U.S. 255, 269 (2000)). *But see Xiulu Ruan v. United States*, 597 U.S. 450, 471 (2022) (observing that "the [Supreme] Court interprets criminal statutes to require a *mens rea* for each element of an offense even where the most grammatical reading of the statute does not support that interpretation") (quotation omitted)).

### B. Defendants Who Know They Are Unlawfully Entering the U.S. Enter the NMNDA for a Prohibited Purpose

There are two general ways to violate the first paragraph of § 1382. First, a defendant can "go[ ] upon" military land—restricted or not—for a purpose that is unlawful for reasons apart from the entry itself. This would include, for instance, entering such land for the purpose of committing burglary or assault.[8] In this situation, entering military property with the intent to commit this independent crime provides the bad purpose necessary for criminal liability, regardless of the offender's knowledge of the land's status. In such cases, it is not necessary to read any additional mens rea into the statute in order to "separate wrongful conduct from 'otherwise innocent conduct.'" *Elonis,* 575 U.S. at 736.

In the second category, a defendant violates § 1382 by "go[ing] upon" restricted military property without authorization without any intent to commit a *separate* crime. In that instance,

---

[8] *See, e.g., United States v. Allen*, 924 F.2d 29, 30 (2d Cir. 1991) (upholding a conviction under first paragraph of § 1382 for a defendant who entered property controlled by the United States Navy and damaged a nuclear submarine by "str[iking] its hull with a hammer"); *United States v. Clements*, 960 F.2d 147, 1992 U.S. App. LEXIS 7348, at *1–10 (4th Cir. 1992) (upholding § 1382 conviction for defendant who committed a burglary on a military base); *United States v. Boertje*, No. CRIM. 87-00030-01, 1987 U.S. Dist. LEXIS 6818, 1987 WL 14849, at *3 (E.D. Pa. July 29, 1987) (defendants charged under § 1382 with entering military base for the purpose of damaging aircraft); *United States v. Fox*, 407 F. Supp. 857, 858 (W.D. Okla. 1975) ("Defendant was charged in the Complaint with entering Tinker Air Force Base, Oklahoma, for a purpose prohibited by law which was stated to be the possession of a controlled substance, to-wit: marijuana.").

11

the unauthorized entry *itself* provides the unlawful purpose.  And in that situation, the courts have held that the government must show that the defendant knew he or she was entering a restricted military zone.  As the First Circuit explained, "*when a section 1382 prosecution proceeds on the basis that the defendant has entered a restricted military reservation 'for the purpose of' unauthorized entry*, we think it must be shown that the defendant had knowledge or notice that such entry was, in fact, prohibited."  *United States v. Parrilla Bonilla*, 648 F.2d 1373, 1377 (1st Cir. 1981) (emphasis added).  *See also, e.g., United States v. Floyd*, 477 F.2d 217, 224 (10th Cir. 1973) ("The important fact is that the regulation prohibited entry to certain persons.  It becomes a matter of proof as to whether the Defendants were such persons and intended to enter the base knowing that they were so prohibited."); *United States v. Hall*, 742 F.2d 1153, 1154–55 (9th Cir. 1984) ("The prohibited purpose may be the unauthorized entry itself….Thus, going upon a military base with knowledge that such entry is unauthorized violates the statute.").  This interpretation makes sense in such cases because without such knowledge, nothing would separate wrongful conduct from conduct that is otherwise innocent.  *See United States v. Cottier*, 759 F.2d 760, 762 (9th Cir. 1985) ("The importance of this knowledge arises in that only innocent trespassers are excluded from purview of 18 U.S.C. § 1382.").

The current cases before the Court are part of the first class.  The United States alleges that the charged defendants entered the military zone for the purpose (at least) of entering the United States without inspection.  This is a purpose "prohibited by law."  § 1382.  For this reason, the conduct is not innocent, and there is no reason to read into the statute an additional *mens rea* as to the land's status as a restricted military zone.

The unique situation presented by the NMNDA means that illegal aliens who cross the NNMDA's southern boundary without authorization also do something else without authorization.

Specifically, they cross the U.S.-Mexico boundary without authorization. In doing so, they have committed the crime of "enter[ing] . . . the United States at [a] time or place other than as designated by immigration officers." 8 U.S.C. § 1325(a)(1).[9] Thus, such defendants have violated § 1382 by going "go[ing] upon" the NMNDA for the prohibited purpose of crossing the U.S.-Mexico boundary without authorization (i.e., entering the United States without inspection, in violation of 8 U.S.C. § 1325(a)(1)).

### C. Summary

As with the violations of 50 U.S.C. § 797 discussed in Section III above, if a defendant enters the District of New Mexico from Mexico through an area that is not a designated port of entry—and for the purpose of entering the United States without inspection—he has also violated 18 U.S.C. § 1382 by entering the NMNDA "for [a] purpose prohibited by law." *Id.* at 1376–77.

Such a defendant would be guilty of this § 1382 offense—even if he (1) never saw a sign designating the NMNDA as a restricted area; (2) never knew that he or she was entering military property; and (3) was otherwise unaware that the military restricted unauthorized entries onto this property.

Rather, to be convicted of violating § 1382, the following elements must be met:

(1) The defendant went upon the "New Mexico National Defense Area" (NMNDA), a military installation.

(2) The defendant went upon the NMNDA for the purpose of entering the United States through an area that is not a designated port of entry.

---

[9] Many such aliens will also have committed additional crimes, such as (1) "elud[ing] examination or inspection by immigration officers," 8 U.S.C. § 1325(a)(2) (unless their intent was, for example, to locate immigration officers, perhaps in order to seek asylum); or (2) illegally reentering the United States after having been previously deported, in violation of 8 U.S.C. § 1326.

In sum, if a defendant enters the District of New Mexico from Mexico through an area that is not a designated port of entry—for the purpose of illegally entering the United States—that defendant has violated § 1382 by entering the NMNDA "for [a] purpose prohibited by law."

## V. CONCLUSION

If a defendant enters the NMNDA from Mexico through an area that is not a designated port of entry—and knows that such conduct is unlawful—he has violated 50 U.S.C. § 797. If that individual has done so for the purpose of entering the United States without inspection, that is, "for [a] purpose prohibited by law," he or she has violated 18 U.S.C. § 1382.

Respectfully Submitted,

RYAN ELLISON
United States Attorney

_____
RYAN ELLISON
United States Attorney
District of New Mexico

I HEREBY CERTIFY that I
electronically filed the foregoing using
the CM/ECF system which will send notification to
defense counsel of record by electronic means.

*Electronically Filed*
RYAN ELLISON
United States Attorney

14