**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

IN THE MATTER OF:

MISDEMEANOR CHARGES
PURSUANT TO 50 U.S.C. § 797
AND 18 U.S.C. § 1382

25-MC-19

# RESPONSE TO GOVERNMENT'S BRIEF

**COMES NOW,** Assistant Federal Public Defender Amanda Skinner, counsel of record for the Federal Public Defender's Office, District of New Mexico, and any counsel appointed pursuant to the Criminal Justice Act, and hereby responds to the Government's brief filed May 5, 2025.

## I. Procedural History

The United States recently began filing criminal charges for trespassing into an alleged military zone pursuant to 50 U.S.C. § 797 and/or 18 U.S.C. § 1382 for every individual also charged with unlawful entry pursuant to 8 U.S.C. § 1325.

The Federal Public Defender's Office ("FPD") and attorneys appointed pursuant to the Criminal Justic Act ("CJA") immediately brought to the Government and court's attention that the charges pursuant to 50 U.S.C. § 797 and/or 18 U.S.C. § 1382 are unsupported by probable cause. However, because the Government filed informations after first filing complaints, the Government was able to avoid probable cause scrutiny at preliminary hearings. Nevertheless, at initial appearances held on

April 30, 2025, the duty FPD moved to dismiss all charges pursuant to 50 U.S.C. § 797[1]. The court denied the motion.

Subsequently, this Court issued an Order for Briefing (the Order) on May 1, 2025, directing the United States to assert with supporting legal authority, its position as to the appropriate *mens rea* standard for both 50 U.S.C. § 797 and 18 U.S.C. § 1382. (Doc 1.) The Order allows the FPD and members of the CJA panel to respond to the Government's filing. (*Id.*)

The Government filed its brief on May 5, 2025. (Doc. 4). Members of the CJA panel have consulted with undersigned counsel regarding the Government's brief, and the FPD's response. The CJA panel members elected to join the FPD's response.

As discussed below, both 50 U.S.C. § 797 and 18 U.S.C. § 1382 require the Government to prove the defendant knew they stepped into the New Mexico National Defense Area ("NMNDA") unlawfully. To pursue charges pursuant to 50 U.S.C. § 797, the Government must also prove the defendant "willfully violat[ed] any defense property security regulation[.]" It is well established that the term "willful" in the criminal context requires a culpable state of mind. *See generally Bryan v. United States*, 524 U.S. 184, 191 (1998) ("As a general matter, when used in the criminal context, a 'willful' act is one undertaken with 'bad purpose.'").

Moreover, 18 U.S.C. § 1382 also requires the Government to prove that the defendant entered a military property specifically for a "purpose prohibited by law." The Government argues that a plea or conviction pursuant to 8 U.S.C. § 1325 supplies

[1] On this date, the Government had not yet begun charging violations of 18 U.S.C. § 1382.

the requisite intent and *mens rea* requirements for automatic convictions under both 50 U.S.C. § 797 and 18 U.S.C. § 1382. As outlined below, both statutes have specific and unambiguous *mens rea* requirements that are deeply rooted in Anglo-American criminal jurisprudence, which cannot be conveniently avoided through sleight-of-hand arguments. *See United States v. United States Gypsum Co.*, 438 U.S. 422, 436 (1978) ("The existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence").

## II. <u>50 U.S.C. § 797 Penalty for Violation of Security Regulations and Orders</u>

Title 50 U.S.C. § 797 applies to anyone who "willfully violates any defense property security regulation." "When interpreting the language of a statute, the starting point is always the language of the statute itself." *United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir. 2002). "If the language is clear and unambiguous, the plain meaning of the statute controls." *Id.* However, if a statute is ambiguous, a court should generally "seek guidance from Congress's intent" to discern which interpretation best fits the statutory language. *See United States v. Jefferson*, 989 F.3d 1173, 1177-78 (10th Cir. 2021). A statute is ambiguous if it is "capable of being understood by reasonably well-informed persons in two or more different senses." *Quarrell*, 310 F.3d at 669.

"[I]t is well-established that silence alone does not necessarily suggest that Congress intended to dispense with a *mens rea* element." *United States v. Martinez-Morel*, 118 F.3d 710, 716 (10th Cir. 1997). But § 797 is not silent and explicitly states

the Government must prove a willful violation of "any defense property security regulation." 50 U.S.C. § 797; *see also Dennis v. United States*, 341 U.S. 494, 500 (1951) ("A survey of Title 18 of the U.S. Code indicates that the vast majority of the crimes designated ... require, ... proof of the existence of a certain mental state, in words such as 'knowingly,' 'maliciously,' 'willfully,' 'with the purpose of,' 'with intent to,' or combinations or permutations of these and synonymous terms. The existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence") Moreover, "in the criminal context, a 'willful' act is one undertaken with 'bad purpose.'" *Bryan*, 524 U.S. at 191. Thus, to determine what *mens rea* is required to "willfully" violate § 797 requires the Court to discern what "bad purpose" the accused must have at the time they "violate any defense property security regulation."

**A. Plain Language of the Statute**

The plain language of § 797 unambiguously requires that the defendant willfully (*i.e.*, for a bad purpose) commit a specific "security violation." 50 U.S.C. § 797. Thus, the *mens rea* requirement of § 797 plainly requires knowledge of the security regulation at issue and an act in defiance of that regulation for some nefarious or "bad purpose." *See id.*

The Tenth Circuit Pattern Criminal Jury Instructions suggest that "when a statute uses [willfully], care should be taken to distinguish between its meanings. A 'willfulness' requirement may impose on the Government the burden of proving that the defendant had knowledge of his conduct, or that his conduct was unlawful, or of

the precise legal duty, the violation of which forms the substance of the charges against the defendant." Tenth Circuit Pattern Jury Instructions Criminal § 1.38.

"As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.'" *Bryan*, 524 U.S. at 191. While "willful" does not always trigger a specific intent requirement, the term "differentiates between deliberate and unwitting conduct, but in the criminal law it also typically refers to a culpable state of mind." *Id.*[2] The Supreme Court has also expressly held that it recognizes that a statute lacks a *mens rea* requirement in only "limited circumstances"—and often only when a "statute[]... regulate[s] potentially harmful or injurious items." *Staples v. United States*, 511 U.S. 600, 607 (1994).

In applying these well-established standards to 50 U.S.C. § 797, the statute plainly requires the Government to prove the defendant acted with the specific intent to violate a specific security regulation. That is, the statute requires that a person "willfully violate" a certain subset of regulations: those that protect defense property security.[3] Because a person must "willfully violate" such a regulation, they must not

[2] The comments to Pattern Instruction § 1.38 cite the following Supreme Court caselaw interpreting "willfulness" as requiring intentional conduct that the actor knows to be a violation of the law: *Cheek v. United States*, 498 U.S. 192, 201 (1991) (holding that, because of the complexity of the tax laws, "willfulness" requires proof of a "voluntary, intentional violation of a known legal duty."); *Ratzlaf v. United States*, 510 U.S. 135, 149 (1994) (applying *Cheek* to the Bank Secrecy Act to find that a willful violation of antistructuring provision required proof that defendant "knew the structuring in which he engaged was unlawful"); *Bryan*, 524 U.S. at 196–98 (interpreting the willfulness element of the federal firearm licensing requirement of 18 U.S.C. § 924(a)(1)(D) to require proof that the defendant knew his conduct was unlawful, but not that the defendant knew the precise legal duty which he was charged with violating). *See* Tenth Circuit Pattern Jury Instructions Criminal § 1.38.

[3] The Tenth Circuit grappled with a very similar *mens rea* issue in *United States v. Quarrell*, 310 F. 3d 664 (10th Cir. 2002). The Tenth Circuit addressed whether the Archaeological

only act with some nefarious intent, but that nefarious intent must also be directed at violating a specific defense property security regulation. Thus, not only does the term "willful" unambiguously require a culpable state of mind, but that culpable state of mind must also be specifically directed toward committing a defense property security regulation.[4]

The Government incorrectly argues any mental state required under 50 U.S.C. § 797 is automatically supplied by proving that someone also committed an illegal entry pursuant to 8 U.S.C. § 1325. The Government suggests that "a defendant who enters the District of New Mexico through an area that is not a designated port of entry-and knows that such conduct is unlawful because it constitutes an unlawful entry into the United States itself, has violated § 797 by 'willfully violat[ing]' the military regulation that prevents unauthorized NMNDA entries." (Doc. 4 at 4).

---

Resources Protection Act ("ARPA") required the Government to prove the defendant knew he or she was excavating on public land. The penalty section of the ARPA states "[a]ny person who knowingly violates" the act is subject to the proscribed punishment. *Id.* at 670. The Tenth Circuit determined the term "knowing" did not apply to the requirement the excavation occurred on public lands because that was a jurisdictional requirement. Here, the Government's jurisdictional requirement is separate from the additional requirement that they also prove the defendant "willfully" violated a defense property security violation.

[4] The Government cites numerous cases to support their position that general intent to commit a completed crime can form the basis of any willfulness and/or *mens rea* to commit a trespassing crime. (Doc. 4 at 5). None of the cases cited stand for this proposition. For example, in *United States v. Wyatt*, 964 F.3d 947 (10th Cir. 2020), the Tenth Circuit held that the defendant would face retrial on conspiracy counts because evidence was presented that the defendants and his co-conspirators knew that the conduct they agreed to undertake was unlawful. *Wyatt* does not stand for the premise the Government advances: that intent to commit a separate, general intent crime, supplies the necessary proof of "willfulness" to violate a military regulation.

The statute's specific focus on "defense property security regulation[s]" to the express exclusion of other forms of regulations is also fatal to the Government's argument. It is a long established and familiar maxim of statutory interpretation that "the enumeration of certain things in a statute suggests that the legislature had no intent of including things not listed or embraced." *Seneca-Cayuga Tribe of Okla. V. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1034 & n.24 (10th Cir. 2003). If Congress had intended for § 797 to apply to acts other than those directed toward willful violations of defense property security regulations, it would have said so. The statutes' failure to include any subsection of regulations or laws (*i.e.*, immigration offenses) other than defense security regulations unambiguously limits the statute to only "defense property-security regulation[s]." 50 U.S.C. § 797.

**B. Unauthorized Entry into the United States is Not a Willful Violation of a "*defense property security regulation.*"**

"As a general rule, it is not a crime for a removable alien to remain in the United States." *Arizona v. United States*, 567 U.S. 387, 407 (2012). While the Tenth Circuit has construed the Immigration and Nationality Act, and specifically illegal reentry pursuant to 8 U.S.C. § 1326, to be a regulatory measure and subject to a form of strict liability, the Government must still prove the defendant had "the intent to do the act of entering the country." *Martinez-Morel*, 118F.3d at 717. The Government cites no legal authority for its position that the general intent required to prove a violation of § 1325 can be bootstrapped to prove that a defendant also acted "willfully" to violate a defense property security regulation.

Even if this Court finds the statute is ambiguous, the legislative history and purpose of § 797 reveals that Congress did not intend to criminalize the mistaken or unknowing entry by defendants into an area of land that is not an operational military base. *See Quarrell*, 310 F.3d at 669 (if a statute is ambiguous, "a court may seek guidance from Congress's intent, a task aided by reviewing the legislative history. A court can also resolve ambiguities by looking at the purpose behind the statute.").

**C. Legislative History**

If this Court finds that § 797 is ambiguous, the legislative history tied to the statute reveals no concern from Congress that undocumented immigrants were trespassing over nonoperational military ranges.[5] The legislative history materials publicly available on Westlaw addressing § 797 contain only three references to concerns with undocumented immigrants trespassing on military land. All references are in the context of a provision of the National Defense Authorization Act for Fiscal Year 2006, which required the Secretaries of Defense and Homeland Security to report on the impact on military readiness that could be caused by undocumented immigrants whose entry into the United States involves "trespassing upon ***operational*** military ranges." H.R. REP. 109-89, at 400, 573 (2005) (emphasis added); 151 Cong. Rec. H3912-02, at 39-41[6] (2005); H.R. CONF.

[5] The legislative history materials cited above use the term "undocumented immigrants" when discussing possible trespass concerns on operational military ranges.

[6] This record also includes a transcript of an exchange between lawmakers regarding whether placing troops on the southern border would violate the Posse Comitatus Act, a federal law

REP. 109-360, at 1, 54, 70-71, 673 (2005). The Government's brief makes no mention of legislative history or operational military ranges. It instead focuses on "military land" or "military installations." (Doc. 4 at 2, 8, 10-13).

An "operational range" is defined as "a range that is under the jurisdiction, custody, or control of the Secretary of a military department and (A) that is used for range activities, or (B) although not currently being used for range activities, that is still considered by the Secretary to be a range and has not been put to a new use that is incompatible with range activities." 10 USCA § 101(f).

The term "Military Installation" has a broader meaning than an operational military range and includes "a base, camp, post, station, yard, center, homeport facility for any ship, or other activity under the jurisdiction of the Department of Defense, including any leased facility, which is located within any of the several States, the District of Columbia, the Commonwealth of Puerto Rico, American Samoa, the Virgin Islands, the Commonwealth of the Northern Mariana Islands, or Guam." 10 USCA § 2687.

The legislative record reflects, to the limited extent that Congress considered undocumented immigrants in relation to § 797, Congress was only concerned with undocumented immigrants trespassing on an operational base in a manner that impacted military readiness. Like the statutory construction argument above, Congress's exclusive focus on undocumented immigrants trespassing on *operational*

---

that limits the use of federal military personnel to enforce domestic policies. *See* 18 U.S.C. 1385.

military ranges demonstrates that the legislature did not intend for § 797 to apply to a dubious, vacant, newly erected military installation—particularly when it was likely erected merely as a means to target a politically unpopular group via their country of origin.

## III. 18 U.S.C. § 1382 Entering Military, Naval, or Coast Guard Property

Title 18 U.S.C. § 1382 applies to anyone who "within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation[.]" 18 U.S.C. § 1382 Similar to its arguments regarding 50 USC § 797, the Government argues that entering the country without permission automatically supplies any *mens rea* necessary to prove the individual went upon the NMNDA for a prohibited purpose, and that there is no notice requirement. (Doc. 4, at 10-12). The Government urges this Court to find that alleging a violation of 8 U.S.C. § 1325 means the Government has proven the individual is also entering military land to commit a separate crime; similar to when someone enters military land for the specific purpose of committing burglary or assault. (Doc. 4 at 11).

At the outset, the Government ignores the fact that 18 U.S.C. § 1382 is plainly designed to punish those who act with the specific intent to trespass upon military property and then commit some other offense. For example, a person who purposefully enters military property for the purpose of committing a burglary could be convicted under § 1382, but only if the government proves that the individual: (1)

intended to trespass upon the military property specifically; and (2) that their illegal trespass was done specifically in furtherance of the inchoate burglary offense. The Government has failed to articulate how a conviction under 8 U.S.C. § 1325 automatically supplies the specific, subjective intent required to prove these necessary elements. Instead, the elements required to prove 8 U.S.C. § 1325 demonstrate that more than a mere conviction under that statute is required before the Government can also satisfy the separate elements of 18 U.S.C. § 1382.

As an initial matter, a mere conviction, without any additional factual basis, is likely insufficient as a matter of law to establish the specific, purposeful intent, required to sustain a conviction under 18 U.S.C. § 1382. It cannot be disputed that § 1382 requires a person act with the "purpose" of committing a violation of law. However, 8 U.S.C. § 1325 does not require a person to know that he or she is an undocumented alien at the time they cross the border. *See United States v. Nunez-Soberanis*, 406 F.Supp.3d 835, 842-45 (S.D. Ca. 2019) (holding that "[t]here is no evidence that Congress intended to apply a scienter requirement to Defendant's status as an alien" under § 1325). At a bare minimum, the purposeful requirement of 18 U.S.C. § 1382 requires the Government to prove an additional element beyond what is required under 8 U.S.C. § 1325; that the undocumented person did in fact know, for certain, that they are an "alien" as the term is used under 8 U.S.C. § 1325. Absent such evidence, a mere conviction under 8 U.S.C. § 1325 cannot alone furnish probable cause for the purposeful *mens rea* required to commit an offense under 18 U.S.C. § 1382.

Moreover, an undocumented immigrant convicted under 8 U.S.C. § 1325 has completed the crime of illegal entry before allegedly violating 18 U.S.C. § 1382. *See Arizona v. United States*, 567 U.S. at 407 ("As a general rule, it is not a crime for a removable alien to remain in the United States."); *see also United States v. Gaspar-Miguel*, 947 F.3d 632, 634 (10th Cir. 2020)(noting that courts and the Board of Immigration Appeals have continued to interpret "enter," in a variety of contexts, as only completed once an individual is "free from official restraint.").

Because the crime of unlawful entry is complete at the moment of entry, an undocumented immigrant's presence on an alleged military instillation is not undertaken for the "purpose" of committing an additional criminal offense. Stated differently, because an offense under 8 U.S.C. § 1325 is completed at the point of entry, the government must prove that the undocumented immigrant possessed the subjective intent to commit an additional, inchoate, violation while present on the relevant military property.

However, even if a completed offense under § 1325 provides evidence of an intent to enter military land with a prohibited purpose, the Tenth Circuit has interpreted § 1382's "prohibited purpose" language as being directly tied to a knowledge and/or notice requirement. *See United States v. Floyd*, 477 F.2d 217 (10th Cir. 1973). In *United States v. Floyd*, the defendants were charged after entering a military base to protest the Vietnam War. *Id.* at 225. When the group crossed a white line signifying the entrance to the base, they were met by a Lieutenant Colonel who read them a statement warning them they would be arrested and prosecuted under

§ 1382 if they did not comply. *Id.* at 220. The defendants did not qualify as visitors and had ample warning not to enter because base personnel attempted to hold the group back and told them they were not allowed to enter without permission of the base commander. *Id.* at 221, 224.

The defendants in *Floyd* argued that the Government presented no evidence of their purpose or intent to enter the base without permission for a prohibited purpose. *Id.* at 225. The Tenth Circuit upheld the convictions on the grounds that the warning sign posted at the entrance to the base was visible to anyone who walked or drove onto the base and stated that permission to enter is required. *Id.* ("In lieu of obeying [the warnings], they sat down and refused to leave. They carried placards protesting the war in Vietnam. Their intent to enter the base without permission and their intent to demonstrate against the Vietnam war on the base may be reasonably inferred from these facts.").

The Defense contends the defendants charged pursuant to 18 U.S.C. 1382, are charged under a theory of entry alone. "Where entry alone is the basis of the violation," the Government must prove only that the defendant knew that "the entry [was] unauthorized." *United States v. Cottier*, 759 F.2d 760, 762 (9th Cir. 1985).

The defense recognizes the signage, along with the location of the defendant's entry in relation to any signage, as critical to their defense of their clients. On May 2, 2025, undersigned counsel made an emergency discovery demand under Federal Rule of Criminal Procedure 16 at initial appearances to determine what, if any,

signage was placed upon the newly erected military land along the New Mexico and Mexico border. This Court denied the specific discovery demand.

The United States Attorney's Office did coordinate a visit to a portion of the border area in question for undersigned counsel and her colleagues on May 8, 2025. Photographs were not allowed[7]. It was readily apparent to undersigned counsel that the location of the signage is wholly inadequate to inform anyone approaching the alleged military land from either side of the border that they are entering the space prior to entering it. *See* Exhibit A (Affidavit from Federal Defender Investigator Horlando Lopez, explaining the locations of the signs).

Because the Government cannot prove that any defendants knew their alleged entry into the strip of land in question was unauthorized, let alone prove that any defendants were entering the area for a prohibited purpose, the Government has failed to furnish the necessary probable cause to establish the elements necessary to sustain a conviction under 18 U.S.C. § 1382, and these charges must be dismissed.

## IV. <u>The Rule of Lenity Should Apply</u>

The Government argues that charging a general intent crime such as an illegal entry also allows them to file two separate charges for trespassing with no additional evidence of the defendant's willfulness, knowledge of the status of the land, or evidence of the purpose for the entry. Even if this Court is persuaded this aberrant

[7] The discovery demand made May 2, 2025, specifically requested the ability to photograph the land in question pursuant to Federal Rule of Criminal Procedure 16(e), which requires the Government to permit the Defense to photograph "places [...] with the Government's possession, custody, or control." By information and belief, the Government is in control of the land in question.

charging scheme is allowed, the rule of lenity should apply to the Government's proposed use of both statutes.

The rule of lenity "instructs courts to interpret ambiguous criminal statutes favorably to the accused." *Unites States v. Ruiz-Gea*, 340 F.3d 1181, 1188 (10th Cir. 2003). While the Defense does not concede either statute is ambiguous, the Court could find attempts at statutory construction of both statutes leaves the Court without an answer and that the rule of lenity should apply. *Muscarello v. United States*, 524 U.S. 125, 138 (1998) ("The rule of lenity applies only if, after seizing everything from which aid can be derived, ... we can make no more than a guess as to what Congress intended.") (internal quotations omitted; ellipses in the original).

**V. Conclusion**

The Defense is cognizant of their specific duty to zealously advocate for and defend their clients, including demanding proof that "every element of the case be established." N.M.S.Ct.R. 16-301; *see also* ABA Model Rule 3.1 ("A lawyer for the defendant in a criminal proceeding [...] may nevertheless so defend the proceeding as to require that every element of the case be established.") The Government also has a special responsibility as prosecutor in a criminal case. Indeed:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much

> his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88 (1935).

To allow the Government this novel charging theory runs the risk of supporting the Government's attempt to strike a foul blow against undocumented immigrants. Under the Government's theory of prosecution, these undocumented immigrants are now facing three separate charges with *mens rea* supported only by the illegal entry charge pursuant to 8 U.S.C. § 1325.[8] The Anglo-American system of criminal jurisprudence places multiple important barriers, such as notice, and *mens rea* requirements, to protect against such tactics, particularly ones designed to target vulnerable groups based on their country of origin. *See Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973) ("[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare ... desire to harm a politically unpopular group cannot constitute a legitimate governmental interest")

The Federal Public Defenders, together with our colleagues from the CJA Panel, respectfully request this Court consider ordering oral argument so the parties

[8] The Government's charging theory that one act, stepping across an international boundary line, supplies the necessary *mens rea* and any applicable knowledge requirements for three separate criminal statutes implicates double jeopardy. *See United States v. DiFrancesco*, 449 U.S. 117, 127-28 (1980) ("The underlying idea [to double jeopardy], one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense") This charging scheme also implicates multiplicitious sentences. *See United States v. Barrett*, 496 F.3d 1079, 1095 (10th Cir. 2007) (explaining that multiplicitous counts which may result in multiplicitous convictions are considered improper because they allow multiple punishments for a single criminal offense). These, along with the discovery and equal protections issues already raised in open court on May 2, 2025, are issues for another day.

may be questioned as to their positions and to develop a complete record on these emerging and important legal issues. Absent proof from the Government that the defendants willfully violated a military regulation and entered military land with a prohibited purpose or entered with knowledge the entry onto military land was prohibited, this Court cannot allow the Government to continue to prosecute charges pursuant to 50 U.S.C. § 797 and 18 U.S.C. § 1382.

Respectfully submitted,

**FEDERAL PUBLIC DEFENDER**
506 S. Main Street, Suite 400
Las Cruces, NM 88001
(575) 527-6930

***(Electronically filed May 08, 2025)***

By: ______________________
AMANDA SKINNER
Assistant Federal Public Defender