IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF:<br>MISDEMEANOR CHARGES<br>PURSUANT TO 50 U.S.C. § 797<br>AND 18 U.S.C. § 1382 | 25mc19 GBW |

### AMENDED OBJECTION OF THE UNITED STATES TO ISSUANCE OF AN ADVISORY OPINION ON 50 U.S.C. § 797 AND 18 U.S.C. § 1382

On May 1, 2025, this Court *sua sponte* opened this miscellaneous matter and issued an "Order for Briefing" (Doc. 1) directing the United States to provide its views on the *mens rea* standards applicable to offenses under 50 U.S.C. § 797 (violations of security regulations and orders on military property) and 18 U.S.C. § 1382 (entering military property for an unlawful purpose). The order gave the United States five days in which to comply, and invited the Federal Public Defender (FPD) to respond to the government's submission. On May 5, 2025, the United States responded to that Order (Doc. 4) and explained that, if an individual enters the designated New Mexico National Defense Area (NMNDA) with the intent to enter the United States without inspection and with knowledge that such conduct is unlawful, he has committed a "willful[]" violation of "any defense property security regulation," in violation of 50 U.S.C. § 797, and has entered military property for a "purpose prohibited by law," in violation of 18 U.S.C. § 1382.

On May 8, 2025, at the Court's invitation, the FPD filed its response, and requested "oral argument so the parties may be questioned as to their positions and to develop a complete record on these emerging and important legal issues." Doc. 5 at 16-17. But there can be no "complete record" because there is no particular case (and attendant set of facts) at issue.

Indeed, the Order—which was issued without prompting from any party, outside the context of any particular case, absent any relation to an identified defendant, on a miscellaneous docket, and untethered to any contemplated or requested relief—was an improper exercise of the Court's authority. Although the United States complied with the Order and provided the requested briefing, we urge the Court to avoid the further impropriety of issuing an advisory opinion purporting to provide views on abstract questions of law that have not yet been properly raised in any case by any party.

1. Under Article III of the Constitution, "the judicial Power" extends only to "Cases" and "Controversies." U.S. Const. art. III sec. 2. The Supreme Court has "long understood that constitutional phrase to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58 (2020); *see Coleman v. Miller*, 307 U.S. 433, 460 (1939) (opinion of Frankfurter, J.) ("[I]t was not for

courts to pass upon . . . abstract, intellectual problems but only if a concrete, living contest between adversaries called for the arbitrament of law").

A close corollary of the cases-and-controversies requirement is the party-presentation principle. "In our adversarial system of adjudication, . . . 'we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'" *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020). "'[C]ourts are essentially passive instruments of government,'" which "'do not, or should not, sally forth each day looking for wrongs to right.'" *Ibid.* Rather, courts "'wait for cases to come'" to them, and "'normally decide only questions presented by the parties'" in the context of a discrete case.[1] *Ibid.* Simply put, "under our constitutional system[,] courts are not roving commissions assigned to pass judgment on the validity [or operation] of the Nation's laws." *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973).

2. No basis exists for the Court's extraordinary departure from those foundational principles here. The Court's stated justification for its *sua sponte* Order was "[t]he scarcity of caselaw relating to these offenses" and "the unprecedented nature of prosecuting such offenses in this factual context," which together left "the Court unclear about the *mens rea* standard as applied in these cases." Order 1. In

---

[1] While there is not currently a live motion to dismiss for this Court to decide, the FPD did make an oral motion to dismiss the 50 U.S.C. § 797 charges on or about April 29, 2025. That motion to dismiss was orally denied by United States Magistrate Judge Gregory J. Fouratt.

other words, because the Court anticipated that undecided legal questions might lie ahead in pending or future prosecutions in this district—before potentially different judges—it sought to accelerate their resolution through an omnibus briefing order reflecting its own framing of the issues, outside the particular facts of any case or arguments raised by any particular defendant, and apparently designed to provide legal guidance to courts across all cases, present and future, across the district.

To the extent any such questions might prove novel or difficult, however, this confirms that the Court should wait to address them only when necessary and when anchored to concrete facts rather than abstract hypotheticals. "Exercising [such] judicial restraint . . . 'frees the Court . . . from premature interpretations of statutes in areas where their . . . application might be cloudy.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). Indeed, "[e]very tendency to deal with [controversies] abstractedly, to formulate them in terms of sterile legal questions, is bound to result in sterile conclusions unrelated to actualities." Felix Frankfurter, *A Note on Advisory Opinions*, 37 Harvard L. Rev. 1002, 1003 (1924). Although jurists of good faith may be tempted "to write lengthy and abstract dissertations upon questions which are neither presented by the record nor necessary to a proper disposition of the issues raised," such a disquisition on unsettled questions would be "in the nature of an advisory opinion, for it attempts to resolve with finality many difficult problems which are at best only tangentially

4

involved here." *Culombe v. Connecticut*, 367 U.S. 568, 635-36 (1961) (Warren, C.J., concurring).

3. The instant procedural posture would be improper even if the Court were acting in a particular case. If a defendant charged with violating §§ 797 or 1382 moved to dismiss the information based on a legal argument that these statutes prescribe particular *mens rea* requirements, the Court would be duty bound to deny the motion. That is because "[c]hallenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006); *see also United States v. DeLeon,* 287 F. Supp. 3d 1175, 1184-85 (D.N.M. 2017) ("The Federal Rules of Criminal Procedure contain no analogue to summary judgment under rule 56 of the Federal Rules of Civil Procedure, so the United States does not need to provide pretrial evidentiary support for the Indictment . . . .").

Rather, "[a]n indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997). Legal arguments about the scope of the statutes would be heard when crafting jury instructions or pursuant to a motion under Federal Rule of Criminal Procedure 29. But even in a specific case, a defendant generally may not seek a ruling pretrial about the contours of a

specific statute.² That is even more reason why the Court should not issue an order here.

4. The Court's disregard of these core principles is all the more problematic because the Order purports to make legal determinations in cases involving unlawful entry into the NMNDA. The NMNDA constitutes land designated by the Secretary of the Army as a restricted and controlled area as part of the government's broader efforts to "protect and defend the sovereignty and territorial integrity of the United States" in light of the "National Emergency" caused by, among other things, "[u]nchecked unlawful mass migration." Executive Order 14167, *Clarifying the Military's Role in Protecting the Territorial Integrity of the United States*, §§ 1(c), 2 (Jan. 20, 2025); *see also* National Security Presidential Memorandum-4, *Military Mission for Sealing the Southern Border of the United States and Repelling Invasions* (Apr. 11, 2025), § 1(c) (recognizing the "longstanding authority of a military installation commander to exclude persons from a military installation, as recognized in . . . []50 U.S.C. 797[] and 18 U.S.C. 1382"). The NMNDA is a crucial installation necessary to strengthen the authority of servicemembers to help secure our borders and safeguard the country. The Court

---

² The Tenth Circuit has created an exception to this general rule "where the underlying facts [are] essentially undisputed and the government fail[s] to object to the district court's resort to evidence beyond the four corners of the indictment." *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). The Court cannot invoke this exception in the instant standalone miscellaneous matter without reference to any particular case.

should therefore be particularly reluctant to stray beyond the constitutional limits of the "judicial Power" and unilaterally impose its legal views in cases implicating national sovereignty.

5.  If the Court were to evaluate the legal issues set forth in the Order—which, for the reasons set forth above, it should not—the United States maintains that if an individual enters the NMNDA from Mexico through an area other than a designated port of entry, with the intent to enter the United States without inspection, and knows that such conduct is unlawful, then he has violated 50 U.S.C. § 797 and 18 U.S.C. § 1382.  In urging otherwise, the FPD contends the United States argues that illegally entering the country, in violation of 18 U.S.C. §§ 1325 or 1326, necessarily constitutes the *mens rea* required under §§ 797 and 1382.  And to avoid this *ipse dixit* result, the FPD argues that the United States must prove that a defendant have "nefarious intent . . . directed at violating a specific defense property security regulation" to violate § 797.  Doc. 5 at 6.  As to § 1382, the FPD similarly argues that the government must prove that the illegal alien "possessed the subjective intent to commit an additional, inchoate, violation while present on the relevant military property."[3]  *Id.* at 12.

---

[3] The United States reserves the right to prove, in a particular case, that a defendant had even this heightened *mens rea*.  That this proceeding is unmoored from a specific set of facts further illustrates the impropriety of soliciting views on an abstract legal question.

As set forth in its original brief, however, the United States recognizes it must satisfy the *mens rea* required by §§ 797 and 1382. But although § 797 requires proof of "willfulness," "when used in the criminal context, a 'willful act'" follows "the traditional view that ignorance of the law is no excuse." *Bryan v. United States*, 524 U.S. 184, 191-95 (1998) (quotation omitted). And entering the military zone for the purpose of entering the United States without inspection is a purpose "prohibited by law" under § 1382. The FPD's attempts to manufacture heightened *mens rea* requirements do not comport with the text of the statutes, longstanding precedent, or the United States' compelling interest in safeguarding its military installations.

\*   \*   \*

Although the United States has submitted its views on the Court's questions as ordered, it objects to the Court's Order as a premature and inappropriate effort to decide questions not properly before it. Because "[n]o extraordinary circumstances justified the [Court's] takeover of th[ose questions]" at this juncture, *Sineneng-Smith*, 590 U.S. at 379, this Court should correct course and forgo issuing any advisory opinion purporting to interpret Sections 797 and 1382.

Respectfully submitted,

RYAN ELLISON
United States Attorney

_____
RYAN ELLISON
United States Attorney
District of New Mexico

I HEREBY CERTIFY that I electronically filed the foregoing using the CM/ECF system which will send notification to defense counsel of record by electronic means.

*<u>Electronically Filed 05/13/2025</u>*
RYAN ELLISON
United States Attorney

9